5 So.2d 480
**SOVEREIGN CAMP, W. O. W., v. DAVIS.**
**4 Div. 197.**

Supreme Court of Alabama.

Oct. 16, 1941.

Rehearing Denied Jan. 22, 1942.

Martin & Jackson, of Dothan, for appellant.

Mulkey & Mulkey, of Geneva, for appellee.

LIVINGSTON, Justice.

This is an action on a fraternal insurance policy to recover a death benefit.

The application was made on the 27th of November, 1936, the certificate issued on the 19th of December, 1936, and delivered and accepted December 26, 1936. The insured died August 29, 1938, from a cancer on his chin.

Defendant entered the plea of general issue and three special pleas numbered 2, 3 and 4.

The defense rests upon the theory that the insured was not in sound health, such as to materially increase the risk of loss at the time of the delivery of the policy, contrary to the warranty made at that time that he was in good health; and that insured had within ten years before making application for the policy consulted a physician and received treatment for a serious disease or illness, contrary to the statement of insured in his application for the policy sued on, and which said disease or illness materially increased the risk of loss.

Defendant relies largely upon the testimony of Dr. Boswell, who testified that he treated the insured for carcinoma of the face on different occasions during the years 1931, 1932, 1933, 1935 and 1936. He further testified that according to his records "Henry M. Davis (the insured) came to me on July 17, 1931. I diagnosed his condition. I found lesions on the left side of his face. The nearest I can recollect it was in the region of the left molar (cheek) bone. It was a large fungating growth arising from a flat base extending out. An examination can be made by scraping the injured part and having it examined to determine whether or not it is cancer. An examination could prove that it was cancer by the changes in the cells of the growth. * * * I determined on July 17, 1931 that the lesions that I have described on that occasion was cancer by clinical means only. That is to say, by the presence of numerous keratotic areas and by the presence of new growth, fungating in character, having the typical clinical appearance of cancer. A cancer is a tumor. A cancer is always a tumor. A tumor is not always a cancer. The difference between the two so far as my diagnosis and observation in my practice have gone depends on the clinical appearance and the microscopic findings. The examination I made on Mr. Davis on July 17, 1931, from which I concluded that he had cancer was observation and palpation (feeling) I made no microscopic examination. * * * It is true that an external cancer such as he had may be overcome by the proper use of such material as I do use."

The witness further testified, "The signature to a letter addressed to Mulkey and

Mulkey, dated January 20, 1939, is my signature. I think that Miss Gardner dictated this letter. It is substantially true and it is my signature." The letter is as follows:

"January 20, 1939.

"Mulkey & Mulkey,
"Geneva, Alabama.

"In reply to your recent letter relating to Henry M. Davis, our records show that he had small skin cancers on the face in 1931, 1932, 1933, 1934, 1935 and was seen one time on August 3, 1936. There were intervals when his face was entirely free from any malignant changes. The skin had strong predisposition to the formation of those small malignant lesions. His occupation is a farmer and the exposure to the sun was an ethiological factor. Finally, after an interval of several months, he was seen in 1938 with a very rapid growing advanced cancer on the left side of the face which we were unable to control. Partly due to the lack of cooperation on his part, and due principally to the fact that he was not financially able to remain here for a period of time to take adequate treatment, it would be impossible for me to state whether or not he actually had any active skin cancers on his face at the time he took the policy. But his record does show that he had been under treatment at intervals since 1931.

"F. P. Boswell."

The witness further testified: "I think that a cancer could originate, develop in the face or on the cheek, and result in death to a person within three to six months assuming that he does not during that time obtain regular or adequate treatment. * * * He was seen in 1937 on a number of instances. In my opinion that could develop, originate, under the conditions stated and result in death from three to six months. I would not say that this trouble changed from the left side of his face to the right side of his face. I would say that he had lesions on both sides of his face, separate and individual lesions on both sides, not changing from one side to the other, but developing on both sides of the face." And in answer to the following questions on cross-examination, "Did the left side of his face become smooth and apparently free from cancerous condition until it developed on his cheek?", the witness replied: "There were times when these lesions did, that he would be completely free from these lesions. When they would redevelop he would return, but at all times when he was seen he had the lesions on his face as evidenced by the fact that he received treatment to them. But none became so vigorous, I will say, as the one from which he finally died, which was taken on his left cheek, * * * and that was a more vigorous and more rapidly formulating type of growth than any of the others that he had previously developed." And to the question, "The first lesion that occurred on his left part of the face was in fact cured by you, wasn't it? That is, it disappeared?" he answered, "The first lesion cleared up."

Dr. S. W. Windham, a witness for the plaintiff, testified: "I am acquainted with the different forms and kinds of cancer. We have two general classifications for carcinoma or cancer of the skin. One is what we call basal cell and squamous cell cancer. The basal cell carcinoma is benign. That is, as far as death is concerned, it doesn't produce death within itself. Squamous carcinoma is one that is malignant in that it will spread. It is metastatic, that is, malignant, will metastasize. What we call skin cancer only produces disability by direct extension. To have basal cell carcinoma near the eye, the only way that would spread would be prolific, and might involve the eye that way, but wouldn't spread to different parts of the body, or to different parts of the face only by direct extension." The following question was propounded to witness: "Now doctor, assuming in this case, that Mr. Davis died of a cancer on the chin, and that he died in less than a year from the time that the cancer developed on the chin, and assuming that prior thereto he had what you might call a skin cancer, or something on his cheek, but such had been cured up and arrested, would there be any connection between the cancer on his chin, which resulted in his death, and in this so called skin cancer around his cheek?" Objection by defendant being overruled, witness answered, "If the cancer on his face had been cured there would be no connection between the two." And to the question, "You mean if it had been healed up, doctor?," Dr. Windham answered, "Well a criterion that we use for cured is complete disappearance of the lesion." The witness further testified: "When the lesion disappears, I regard it as cured. To state positively that a man has a cancer of any kind, it can't be done without a microscopic examination of

the cells of the tumor. You can look at this thing and say I think it is so and so, I think it is cancer, but to be absolutely sure you must have a microscopic examination of parts of the tissue." While on cross-examination the witness testified: "Benign lesions of the face can run forty years. Keratoses is what we commonly call sailor's skin or farmer's skin. It is a condition of the exposed parts of the body, face in question. It is present usually in fair complected individuals, blonds, freckled faced people. It is a scaley type of lesion that may be present for a long time on the face, and it is always the outer layer of the skin that is involved. It is not a form of cancer. * * * If Mr. Davis had a cancer on his face, if he was cured, there is no predisposition for that trouble to return. As far as the cancer that he has, if it is one time gotten rid of he has no predisposition to another. Carcinoma of the face can be cured in ninety percent of the cases if you see the lesions early. That has been established as a medical fact."

We deem it unnecessary to burden this opinion with the testimony of lay witnesses. Suffice it to say, that the testimony of these witnesses, including the former financial secretary of the Woodmen of the World lodge at Samson, Alabama, and the barber who frequently shaved the insured up until 1935, tended to show that at or near the time the application was made and the certificate delivered insured's face was smooth and free of lesions, and that apparently he was in good health.

Plaintiff's testimony tended to show that the cancer of the chin, which caused insured's death, developed from a blow against a wagon or truck body sometime in the later part of 1937, along in September or October.

It has been held in several of our cases that some diseases are so serious as affecting the applicant as an insurance risk that, as a matter of law, they are held to increase the risk of loss. On the other hand, other ailments are so passing and temporary that they could not be material, and, as a matter of law, not the basis of a defense of misrepresentation under either alternative of our statute. Sovereign Camp, W. O. W. v. Moore, 237 Ala. 156, 186 So. 123.

We think that the foregoing recital of the salient features of the evidence suffices to show, without discussion that whether or not the disease for which insured was treated by Dr. Boswell was cancer or some other trouble, was a jury question, as well as whether or not it was such a disease or sickness as materially increased the risk of loss. Sovereign Camp, W. O. W. v. Gibbs, 217 Ala. 108, 114 So. 915; Padgett v. Sov. Camp, W. O. W., 218 Ala. 255, 118 So. 456; Sovereign Camp, W. O. W. v. Rowe, 225 Ala. 336, 143 So. 171; New York Life Ins. Co. v. Hoffman, 238 Ala. 648, 193 So. 104.

Therefore, the assignments of error based on the refusal of the trial court to give the general charge for the defendant are without merit.

The trial court did not err in allowing Bonnie Davis, the widow of insured and the beneficiary named in the certificate, to testify that "In December 1936, when he took the application, he had nothing on his face, no lesion or hurt," and that his face was clear in 1936. The testimony tended to prove that insured was in good health when the application was made and the certificate delivered.

For like reasons, assignments of error based on similar questions to and answers by the witness Knowles are without merit.

The fact that the defendant made an independent investigation as to the health of insured, and issued the certificate, has some probative force as to the condition of insured's health at that time.

Assignment of error numbered 12 is based on the ruling of the trial court in sustaining plaintiff's objection to the following question propounded to plaintiff's witness Gap Davis: "He went there on account of his face? (Meaning Seeley's well at Cottonwood, Alabama)." Although the objection was sustained, the record shows that the witness answered, "I don't know what he went there for." If any error intervened, which we do not decide, it was harmless. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

An hypothetical question is not objectionable because it omits to hypothesize every fact shown by the evidence, for an examiner of an expert witness may lay as a basis for the opinion invited only those facts in evidence which conform to the theory the examiner would establish, though, of course, such question should incorporate sufficient facts in evidence to

240

fairly justify the formation of an expert opinion on a material issue in the case; the frame and substance of hypothetical questions to expert witnesses being a matter largely committed to the discretion of the trial court. Birmingham Ry. & E. Co. v. Butler, 135 Ala. 388, 395, 33 So. 33; Morrissett v. Wood, 123 Ala. 384, 26 So. 307, 82 Am.St.Rep. 127; Parrish v. State, 139 Ala. 16, 43, 36 So. 102; Long Dist. Tel. & Tel. Co. v. Schmidt, 157 Ala. 391, 47 So. 731; Birmingham Ry., L. & P. Co. v. Saxon, 179 Ala. 136, 59 So. 584; Alabama City, G. & A. Rwy. Co. v. Bessiere, 197 Ala. 5, 72 So. 325; Jones on Evidence, §§ 370, 371; 17 Cyc. pp. 244, 250.

The question propounded to plaintiff's witness Dr. Windham is in accord with the foregoing and the court did not err in overruling defendant's objection.

 Assignments of error 15, 16, 17, 19, 29, 30, 31 and 32 are based on the refusal of the trial court to give certain charges at the written request of the defendant, and are argued jointly and in bulk, and all assignments of error meet the same fate, if there can be no reversal as to either charge. Morgan-Hill Paving Co. v. Thomas, 223 Ala. 88, 134 So. 480; City of Montgomery v. Moon, 208 Ala. 472, 94 So. 337; Alabama Co. v. Norwood, 211 Ala. 385, 100 So. 479; Bush v. Bumgardner, 212 Ala. 456, 102 So. 629; Malone v. Reynolds, 213 Ala. 681, 105 So. 891; Southern Rwy. Co. v. Cunningham, 152 Ala. 147, 44 So. 658.

Charge I (assignment of error No. 15) is as follows: "I charge you, gentlemen of the jury, that cancer is a disease which materially increases the risk of loss, and if you believe that at the time Henry M. Davis applied for a certificate of insurance that he was suffering from a cancer, and that in his application he stated he was in good health in that event the plaintiff would not be entitled to recover in this case."

This charge was refused without error for the employment of the term "if you believe" instead of *if you are reasonably satisfied by the evidence*.

Charge 18 was properly refused because it was abstract, and tended to cover no issue in the case. Therefore defendant can take nothing by these assignments of error.

The trial court did not commit error to reverse in sustaining plaintiff's

objection to the hypothetical question propounded to Dr. Windham, made the basis of defendant's assignment of error number 14. The same question, in substance, had been previously answered by the witness. Supreme Court Rule 45.

The scope of inquiry on cross-examination is limited only by the sound discretion of the trial court, with a view to test the skill, accuracy, judgment and memory of the witness and the consistency of his answers with each other and with his present testimony. Birmingham Rwy. & Electric Co. v. Mason, 144 Ala. 387, 39 So. 590, 6 Ann.Cas. 929. No error intervened in the cross-examination of defendant's witness Dr. Boswell, made the basis of defendant's assignments of error 5 and 6.

Assignments of error 19, 20, 21, 22, 23, 24, 25, 26, 27 and 28 are based on the refusal of the general charge in various forms.

We have already indicated that the evidence touching the issues involved presented questions for the jury, and each of the charges here considered were for that reason properly refused.

We have carefully examined the motion for a new trial, and find no error in the action of the trial court in overruling it.

There being no error in the record, the judgment of the lower court should be and is affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.