## LEAR v. WOODMEN OF THE WORLD LIFE INS. SOC.

### No. 2030.

Court of Appeal of Louisiana. First Circuit.

Nov. 9, 1939.

740

Haas & Haas, of Opelousas, for appellant.

S. A. Marchand and Walter Lemann, both of Donaldsonville, for appellee.

LE BLANC, Judge.

This is a suit instituted by the beneficiary under a certificate of insurance issued on February 1, 1930, by the Sovereign Camp of the W. O. W. now known under the name of Woodmen of the World Life Insurance Society. It is a foreign corporation domiciled and having its main office at Omaha, Nebraska. The assured under the certificate was Glavin Allen Lear, son of the plaintiff, Mrs. Hattie A. Lear. The death benefit is in the sum of $1,000, which amount the defendant refused to pay on the ground that at the time of the death of the assured member the certificate had lapsed.

In her petition, the plaintiff, after setting out the death of her son on March 9, 1938, and her effort to make formal proof thereof, alleges that he had paid all dues, premiums, assessments and payments which he had obligated himself to pay under the terms of the certificate, and in the alternative, if he had defaulted on any such payment, that the certificate provides for a reserve or loan cash value to be computed on the American Experience Table of Mortality and that according to said computation there was, at the time of his death, a sufficient reserve and more to have kept the certificate alive and in force.

There are two defenses urged by the defendant: (1) That the plaintiff failed to make proper and legal proof of death of the insured, and (2) that the reserve or loan value as computed according to the constitution, laws and by-laws of the defendant Society which formed part of the certificate was not sufficient to have kept it in force and that it had lapsed at the time of the death of the member.

The pleadings, consisting of an original and supplemental petition and answer to each, are very lengthy and involved, and of a rather argumentative nature, notwithstanding which, plaintiff filed a rule for judgment on the face of the pleadings which rule after hearing was made absolute and judgment rendered in her favor in the sum of $923.88, with interest at 6%. The defendant has appealed.

It would not be difficult for us to agree with the learned district judge on the issue concerning lack of legal proof of death of the insured, upon which he held that that issue could be decided on the admissions contained in the defendant's answer. Plaintiff had alleged that her son died on March 9th, 1938, and that on March 16, 1938, she notified the defendant and requested blank forms on which to present formal proof but defendant denied all liability under the certificate and refused to forward the requested forms. The answer to that allegation is that the defendant "has

some information but no legal proof of the death of Glavin A. Lear as alleged in Article 8 of plaintiff's petition and for this reason does not admit same and demands strict proof of said allegation. Respondent admits the remaining allegations of said article."

■ That can hardly be said to be a specific denial of a material allegation of fact as required under the Pleading and Practice Act No. 228 of 1924 and its amendment Act No. 27 of 1926. It is evasive and does not constitute either an affirmance or denial. Under the statute it is provided that all material allegations of fact which are not denied in the defendant's answer shall be deemed to be admitted.

■ Moreover, in admitting the request for proof forms and that it refused to send them, denying all liability under the certificate, the defendant made it impossible for the plaintiff to present such proof, lack of which it now urges as a defense. It cannot be heard to complain of plaintiff's failure to do something which it itself had prevented her from doing. Johnson v. District Grand Lodge, La.App., 149 So. 145, Sovereign Camp, W. O. W., v. Deese, 236 Ala. 85, 181 So. 274.

On the other issue presented by the defendant, we are of the opinion that the trial judge erred in rendering judgment on the face of the pleadings. The bone of contention on this point is with regard to the computation of the reserve or loan value to the credit of the insured under the certificate and which could be applied to the payment of any premium in the event he defaulted therein.

The certificate called for the payment of a regular monthly payment or premium for the life insurance provided therein and in addition it carried a double indemnity and also disability benefits and premium waiver features for which the insured paid additional premiums. These last two features were covered by two different riders attached to the certificate. Each stipulated the annual amount of their respective premiums. Plaintiff contends that in computing the reserve or cash loan value to the credit of the insured, the defendant could only take into consideration the amount of premium due for life insurance and that deducting that amount due monthly, only, there was sufficient reserve or loan value left to take care of the certificate from the time of the insured's default in pay-

ment in February, 1937, to the date of his death. The defendant on the other hand contends that not only the premium for life insurance but those due under the two riders as well had to be taken into account in computing the reserve or loan value and when the total amount of these premiums was deducted it is shown that there was not a sufficient amount left to the credit of the insured to keep the certificate alive.

The certificate carries a small block in the upper right hand corner of the first page in which the monthly rate is stated to be $2.09 and the annual rate $24.13. This annual amount includes all three premiums, the one for life insurance and those for each of the other features under the two riders attached to the certificate. In order to break down this amount and arrive at the monthly rate due on each feature plaintiff alleged in her petition that the monthly rate for life insurance was $1.73, for disability benefits 21 cents and for double indemnity 15 cents, thus making the total monthly rate $2.09 as stipulated. In its answer to that allegation the defendant denied the same as written. It admitted however that the monthly rate was $2.-09 and this amount included 21 cents for disability and 15 cents for double indemnity benefits. This is the admission which seems to have influenced the district judge in awarding judgment on the face of the pleadings. He held, as a matter of law, that in construing the policy the amount due for premiums on the two riders could not be included in the computation of the reserve or loan values and that when they were excluded defendant was authorized to deduct only the monthly amount of $1.73 to maintain the life insurance certificate in force and there was a sufficient balance left after doing so to the credit of the insured to so maintain it.

■ In so construing the certificate the district judge seems not to have looked beyond its own terms and provisions which would have been proper had the certificate been a regular policy of insurance and not one issued by a fraternal insurance society. Act No. 52 of 1906 as amended by Act No. 227 of 1916 requires that an insurance policy contain the entire contract between the insurance company and the assured, but by the provisions of Act No. 256 of 1912, a fraternal society which issues certificates providing for the payment of death benefits is exempt from all provisions of the insurance laws of this State, not only in its

relations with the State, but for every other purpose. Under Section 8 of that act it is further provided that "every certificate issued by any such society shall specify the amount of benefit provided thereby, and shall provide that the certificate, the charter or articles of incorporation, or, if a voluntary association, the articles of association, the constitution and laws of the society and the application for membership and medical examination, signed by the applicant, and all amendments to each thereof, shall constitute the agreement between the society and the member, and copies of the same certified by the secretary of the society, or corresponding officer, shall be received in evidence of the terms and conditions thereof, and any changes, additions or amendments to said charter or articles of incorporation, or articles of association, if a voluntary association, constitution or laws duly made or enacted subsequent to the issuance of the benefit certificate shall bind the member and his beneficiaries, and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were in force at the time of the application for membership." Plaintiff herself has judicially alleged that the defendant is a fraternal insurance society and in a recent case decided by the Court of Appeal for the Second Circuit, Deal v. Sovereign Camp W. O. W., 161 So. 621, it was held to be a society governed by the provisions of the act from which we have just quoted.

In its answer, the defendant in several articles pleaded the provisions of its constitution, laws and by-laws and particularly did it plead Section 63 thereof under which it contends that the assured member under the certificate sued on herein had become suspended and the certificate had become void. As its constitution, laws and by-laws, under the statute just referred to constituted part of the contract between the member and itself, defendant undoubtedly had the right to present any defense it may have had under any of the provisions of its constitution and laws, having pleaded the same, and it is for that reason especially do we think that the district judge was in error in having granted the plaintiff judgment on the face of the pleadings.

Under the view we take of the matter it becomes necessary that we remand the case to the district court for the purpose of trial on the issues as presented in the pleadings and it is for that reason now or-

dered, adjudged and decreed that the judgment appealed from be and the same is hereby reversed and it is further ordered that the case be remanded to the district court to be tried and proceeded with according to law. It is further ordered that the plaintiff pay the costs of this appeal, all other costs to await the final determination of the case.